UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| ANGIE MICHELLE RUCKER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Nos. 2:17-CV-142; 2:16-CR-30(10) |
| ) | *Judge Jordan* |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

### MEMORANDUM OPINION

Petitioner Angie Michelle Rucker pled guilty to a methamphetamine-distribution conspiracy, a lesser included offense related to one of several counts charged against her in an indictment [Docs. 3, Indictment (sealed), 126, Plea Agreement, 127, Plea Agreement Supplement (sealed), and 153, Minute Entry for Change of Plea, Case No. 2:16-CR-30].[1] For that offense, Petitioner received 97 months' imprisonment, to be followed by a 4-year term of supervised release [Doc. 255, Judgment, Case No. 2:16-CR-30].

Petitioner now brings this pro se motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255, a supporting memorandum of law, and an amended § 2255 motion [Docs. 1-2, 4]. The United States has responded in opposition to Petitioner's § 2255 motion and amended motion [Doc. 9], and Petitioner has filed no reply. The matter therefore is ripe for resolution. The Court finds the materials submitted, together with the record of the underlying criminal case, conclusively show that Petitioner is not entitled to relief on the claims asserted. Accordingly, the

---

[1] Unless otherwise noted, citations to documents in this Memorandum Opinion refer to Petitioner's civil case, Case No. 2:17-CV-142.

Court will decide this matter without an evidentiary hearing. *See United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993). For the reasons discussed below, the Court will find that Petitioner's motion to vacate is without merit and, thus, will **DENY** and **DISMISS** her § 2255 motion **WITH PREJUDICE**.

## I. PROCEDURAL AND FACTUAL BACKGROUND

On March 8, 2016, a federal grand jury issued a 23-count indictment charging Petitioner and ten co-defendants with various offenses [Doc. 3, Case No. 2:16-CR-30]. Count one charged Petitioner with conspiracy to distribute and to possess with intent to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846 [*Id.*]. Some seven months later, Petitioner entered into a plea agreement with the government [Doc. 126, Case. No. 2:16-CR-30]. In that document, Petitioner agreed to plead guilty to a conspiracy to distribute and possess with intent to distribute 5 grams or more of actual methamphetamine, a lesser included offense of Count one, which charged a higher drug amount, i.e., 50 grams or more of methamphetamine [*Id.* at ¶ 1(a)].

The Court draws the facts from Petitioner stipulations, which formed the factual basis in her plea agreement [*Id.* at ¶ 4]. In the plea agreement, Petitioner admitted that, from June of 2015 to March 8, 2016, she was involved in a conspiracy to distribute at least 35 but less than 50 grams of methamphetamine in the Eastern District of Tennessee [*Id.* at ¶ 4(a)].

More specifically, Petitioner acknowledged that on five occasions (June 3rd, 5th, and 10th of 2015; September 23, 2015; and January 8, 2016), she sold approximately 0.8, 0.8, 0.7, 0.7 and 0.4 grams of methamphetamine respectively to a confidential informant, with each drug transaction being recorded [*Id.* at ¶¶ 4(b)–(f)]. On the date of the last transaction, Petitioner's residence was searched, pursuant to a state search warrant, and discovered therein were

approximately 2 grams of methamphetamine, small amounts of prescription narcotics and marijuana, a loaded .25 caliber semi-automatic handgun, ammunition, drug ledgers, an operational video surveillance system, and multiple pipes, scales, baggies and other drug paraphernalia [*Id.* at ¶4(g)].

During an interview with law enforcement agents the next day, Petitioner admitted that she possessed the firearm for protection; that it was located in her bedroom; that periodically, during the time of the conspiracy, she had sold methamphetamine on a daily basis; that she had multiple suppliers of methamphetamine, one of which supplied her with approximately three to five grams a day from May to July, 2015; and that she herself had supplied methamphetamine to several unindicted co-conspirators [*Id.* at ¶¶ 4(h)-(i)].

Petitioner stipulated that it was not clearly improbable that the firearm found during the search of her residence was connected to the drug trafficking offense, that two, two-level enhancements (one under United States Sentencing Guidelines (USSG) § 2D1.1(b)(1) and the other under USSG § 2D1.1(b)(12)) applied to her, and that she conspired to distribute and was accountable, conservatively, for the distribution of at least 35 grams but less than 50 grams of methamphetamine [*Id.* at ¶ 4(j)]. The parties agreed that, in consideration of Petitioner's guilty plea, the government would move to dismiss the remaining counts at sentencing [*Id.* at ¶ 3]. The plea agreement provided that, in exchange for her guilty plea, Petitioner waived her right to file a direct appeal, with one exception, and her right to file a § 2255 motion or a collateral attack on her conviction or sentence, excluding claims of prosecutorial misconduct or ineffective assistance of counsel [*Id.* at ¶¶ 11(a) and (b)].

On October 25, 2016, two weeks after entry of the plea agreement, Petitioner pled guilty to the methamphetamine conspiracy [Doc. 153, Case. No. 2:16-CR-30]. Thereafter, the United

States Probation Office issued a Presentence Investigation Report ("PSR") to assist the Court in deciding Petitioner's sentence [Doc. 204, PSR (sealed), Case No. 2:16-CR-30].

Using USSG § 2D1.1(a)(5) for § 846 offenses involving more than 35 grams but less than 50 grams of actual methamphetamine, the probation officer who prepared the PSR determined that Petitioner's base offense level was 28 [*Id.* at ¶ 24]. Two levels were added under USSG § 2D1.1(b)(1) for possession of a dangerous weapon and two levels were added under USSG § 2D1.1(b)(12) for maintaining a premises for the purpose of distributing a controlled substance, resulting in an adjusted offense level of 32 [*Id.* at ¶¶ 25-26, 30]. A two-level and a one-level reduction for acceptance of responsibility yielded a total offense level of 29, which, along with a criminal history category of II, resulted in an advisory Guidelines range of 97 months to 120 months [*Id.*, ¶¶ 32-33, 45, 68]. The PSR noted that Petitioner's statutory sentence was five years to 40 years [*Id.* at ¶ 62].

Neither party objected to the PSR [Docs. 220, 236, Case No. 2: 16-CR-30]. As observed earlier, the Court sentenced Petitioner to 97 months' imprisonment—the lowest sentence in her Guidelines range—and dismissed the remaining counts upon motion of the government [Doc. 249, Minute Entry for Sentencing, Case No. 2:16-CR-30]. Judgment entered on February 6, 2017 [Doc. 255, Case No. 2:16-CR-30].

In keeping with the appeal waiver in the plea agreement, Petitioner did not file a direct appeal. Instead, Petitioner submitted this timely pro se § 2255 motion to vacate on August 21, 2017, alleging several claims of ineffective assistance of counsel; a sui generis claim, i.e., a one-of-a-kind claim that does not fit within a recognized category of constitutional or statutory claims; and, in her amended § 2255 motion, a request for a sentence reduction [Docs. 1, 4].

## II. STANDARDS OF REVIEW

### A. Motions to Vacate

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Jefferson v. United States*, 730 F.3d 537, 549 (6th Cir. 2013) (applying *Brecht* test to § 2255 motion). A petitioner "must clear a significantly higher hurdle than would exist on direct appeal" to secure collateral relief. *United States v. Frady*, 456 U.S. 152, 166 (1982); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *Frady*, 456 U.S. at 166).

"[A] pro se petitioner's section 2255 motion is entitled to a generous construction." *Fields v. United States*, 963 F.2d 105, 109 (6th Cir. 1992). Nevertheless, when a movant files a § 2255 motion, she must set forth facts which entitle her to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

### B. Ineffective Assistance of Counsel

When a § 2255 movant claims she was denied her Sixth Amendment right to effective assistance of counsel, a court must presume that counsel provided effective assistance, and the movant bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616-17 (6th Cir.

2003). To meet that burden, a movant must prove that specific acts or omissions by her attorney were deficient and that the attorney failed to provide "reasonably effective assistance," *Strickland v. Washington*, 466 U.S. 668, 687 (1987), which is measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). "[T]he constitutional right at issue here is ultimately the right to a fair trial, not to perfect representation." *Smith v. Mitchell,* 348 F.3d. 177, 201 (6th. Cir. 2003) (citing *Strickland*).

Second, a petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *id.*, and "requires a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (citation and internal quotation marks omitted). The prejudice test is modified in the context of a guilty plea—a petitioner "must show that there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Yet, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). Furthermore, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697.

A petitioner alleging ineffective assistance of counsel bears a heavy burden of proof. *Pough v. United States*, 442 F.3d 959, 966 (6th Cir. 2006). "Surmounting *Strickland*'s high bar is never an easy task and the strong societal interest in finality has 'special force with respect to

6

convictions based on guilty pleas.'" *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979) (internal citation omitted).

### III. DISCUSSION

The claims of ineffective assistance advanced in Petitioner's § 2255 motion to vacate are groundless. Several claims of ineffective assistance offered only in passing also are baseless, as is Petitioner's sui generis claim. Petitioner's final "claim," as she characterizes her request for a role-related sentence reduction, is equally unavailing. The Court addresses each claim in turn.

**A.  Ineffective Assistance of Counsel**

**1.  Failure to File an Appeal** [Doc. 1 at 4, Doc. 2 at 4-5]

The first claim of ineffective assistance articulated in Petitioner's motion to vacate is stated in its entirely, as follows: "Petitioner contends that a lawyer's failure to file a first appeal despite the request of his or her client is a per se violation of the Sixth Amendment, particularly whaere (sic) as here, the alleged conduct of the lawyer left [Petitioner] completely without representation during the appellate phase" [Doc. 1 at 4 (internal punctuation marks omitted)]. As can be seen from the verbatim iteration of the claim, the § 2255 motion itself does not allege that *Petitioner's* counsel failed to file an appeal that *Petitioner* requested, only that "*a* lawyer's failure" to file an appeal upon "the request of *his or her* client" violates the Sixth Amendment right to counsel.

Petitioner's memorandum brief marginally is more enlightening, in that she maintains that "her counsel failed to file a Notice of Appeal regarding her sentence," [Doc. 2 at 4], but she does not indicate that she requested that he file an appeal. Instead, Petitioner discusses general legal principles, including that her "right to a first appeal in a criminal proceeding upon request is well-established" and that "[t]hus, it would appear that a claim based on the failure to perfect a requested appeal, if proven, warrants a legal presumption of prejudice, similar to that found in

7

other Sixth Amendment contexts, namely, cases involving actual or constructive denial of counsel" [*Id.*]. Petitioner cites to *Strickland*, 466 U.S. 668, 691 (1984), for the above legal rules.

Petitioner's brief also points to *Duncan v. United States*, 842 F. Supp. 1016, 1018 (M.D. Tenn. 1993), *aff'd*, 28 F.3d 1213 (6th Cir. 1994), for its finding that counsel's failure to appeal, despite a defendant's instructions to do so, breaches a duty of loyalty to the client and is objectively unreasonable. Petitioner next cites to *Anders v. California*, 386 U.S. 738 (1967), and to several of its progeny. *Anders* spells out an appellate counsel's duty when counsel believes that are no issues worthy of presenting on appeal on his client's behalf.[2] The Court finds *Anders* and its descendent cases inapposite to Petitioner's claim that counsel failed to file a notice of appeal. Though Petitioner extensively cites cases, she provides no factual contentions as to whether she actually instructed counsel to file an appeal.

Nevertheless, the seminal Supreme Court case on a failure-to-appeal claim of ineffective assistance is *Roe v. Flores-Ortega*, 528 U.S. 470 (2000). The *Roe* court applied *Strickland*'s framework in reaching its decision, *id.* at 476-77, meaning that both components of the *Strickland* test apply to assertions that counsel failed to file an appeal. *Id.* at 477. Thus, under *Roe*, to establish that counsel rendered a deficient performance, Petitioner must show either (1) that counsel disregarded her instructions to file a notice of appeal or (2) that counsel failed to consult with her regarding an appeal when he knew or should have known that Petitioner might want to appeal. *Id.* at 478.

If counsel disregarded instructions to file a notice of appeal, prejudice will be presumed. *Id.* at 483. Where counsel's duty to consult exists, but has been disregarded, Petitioner can show

---

[2] *Anders* requires counsel to advise the appellate court that, in his judgment, an appeal would be frivolous; to move to withdraw from his appellate duties; and, contemporaneously, to submit a brief containing any potential arguments that "might arguably support the appeal." *Id.* at 744.

prejudice by establishing that "but for counsel's deficient failure to consult with h[er] about an appeal, [s]he would have timely appealed." *Id.* at 484 (alterations added).

It is well-settled that "a lawyer who disregards specific instructions from a defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Regaldo v. United States*, 334 F.3d 520, 524-25 (6th Cir. 2003). Where counsel fails to file an appeal after being specifically instructed to do so, a defendant is ordinarily entitled to a delayed direct appeal, regardless of whether such an appeal would be meritorious. *Roe,* 528 U.S. at 477; *accord Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998). Counsel's constitutional obligation to consult with a defendant regarding an appeal arises only when there is reason to believe that a rational defendant would want to appeal or that this particular defendant reasonably demonstrated to counsel that she was interested in appealing. *Roe*, 528 U.S. at 480.

Nonetheless, "a defendant's actual 'request' is still a critical element in the Sixth Amendment analysis." *Ludwig*, 162 F.3d at 459; *accord Campbell v. United States*, 686 F.3d 353, 359 (6th Cir. 2012) (observing that "if counsel had ignored the defendant's express instruction to file an appeal, such action amounts to a per se violation of the Sixth Amendment" (internal quotation marks omitted), and at 360 (determining whether petitioner has given "express instructions to proceed with an appeal" is a pivotal factual issue in resolving the claim); *cf. Regalado,* 334 F.3d at 526 (failure to file an appeal is not ineffective assistance where the attorney was not specifically instructed so to do).

The Court has combed through Petitioner's pleadings and finds no assertion that she made an explicit request for counsel to file an appeal. While the Court must charitably construe Petitioner's failure-to-appeal claim, the Court is not obligated to read into her pleading a factual assertion that is not contained therein. *See Spence v. United States*, 68 F. App'x 669, 671 (6th

9

Cir. 2003) ("This standard, however, has limits and does not require the court to speculate about basic facts that could easily be alleged by the petitioner."); *accord Pliler v. Ford*, 542 U.S. 225, 231 (2004) (instructing that "the Constitution [does not] require judges to take over chores for a pro se defendant that would normally be attended to by trained counsel as a matter of course . . . or to perform any legal 'chores' for the defendant that counsel would normally carry out") (all internal citations omitted) (alteration in original); *O'Malley*, 285 F.2d at 735 (observing that a petitioner who files a § 2255 motion must articulate facts entitling her to relief) (listing cases).

Petitioner has alleged no facts to show that she instructed her attorney to appeal. The question then becomes whether Petitioner's counsel had a duty to consult with her about an appeal. *Roe*, 528 U.S. at 478. Although, there is no "bright-line rule that counsel must always consult with the defendant" about an appeal, a duty to consult exists "when there is reason to think either (1) that a rational defendant would want to appeal ... or (2) that this particular defendant reasonably demonstrated to counsel that [s]he was interested in appealing." *Id.* at 480 (alteration added).

The duty-to-consult determination hinges on "all the information counsel knew or should have known." *Id.* One highly relevant factor to consider is whether the conviction is obtained at trial or by means of a guilty plea, which "reduces the scope of potentially appealable issues" and may signify that a defendant seeks to terminate the judicial proceedings. *Id.* Another pertinent factor is whether the plea expressly waived appeal rights. *Id.* Yet another circumstance that might indicate that a rational defendant might want to appeal is whether there are nonfrivolous grounds for appeal. *Id.*

Here, Petitioner fails to allege any nonfrivolous grounds for appeal, and the record discloses no such grounds. Similarly, neither Petitioner nor the record reveals any reason why

she, in particular, would have an interest in an appeal. After all, Petitioner pled guilty and did not assert her right to trial. Too, Petitioner entered into a plea agreement that contained a provision waiving her right to file an appeal, with certain exceptions not relevant here.

In short, because there are no factual assertions in the pleadings from which to conclude that counsel's duty to consult was triggered—indeed, the facts suggest the opposite since Petitioner pled guilty and waived her right to appeal—the Court finds that this claim of ineffective assistance merits no relief. *See Wingo*, 454 F.2d at 53 (vague conclusory statements, denuded of allegations of specific facts, fail to state a viable § 2255 claim); *see also Shehee v. United States*, 230 F.3d 1359 (6th Cir. 2000) (observing that "counsel's decision not to appeal was not deficient per se").

2.     **Failure to Argue Sentencing Disparity** [Doc. 1 at 5, Doc. 2 at 5-7]

Petitioner contends, in her § 2255 motion, that she suffers from a sentencing disparity because her co-defendants received lesser sentences than she received. Petitioner further contends that a great disparity between a defendant's advisory guideline sentence and her co-conspirator's sentences may cause the district court to consider a downward departure to conform the defendant's sentence to that of her co-conspirators. In her memorandum brief, Petitioner compares her sentence to the 10-year sentence of co-defendant Diana Mitchell who was rumored to have had more drugs in her possession than did Petitioner.

Petitioner then compiles a list of individuals who, she maintains, were not charged though they were caught with drug paraphernalia or in possession of drugs, who were present during the search of Petitioner's residence, or who had just left her residence prior to the search and were driving recklessly as they left. Petitioner maintains that "it appears that she was one of the ones "hit the hardest in this offense" [Doc. 2 at 7]. The Court infers, based on the above

11

allegations, that Petitioner is asserting that counsel provided ineffective assistance by failing to make a sentence-disparity argument to obtain a lower or less disparate sentence for Petitioner than the sentences obtained by her co-conspirators.

The relevant sentencing law that governs Petitioner's inferred claim is the sixth subsection in § 3553(a), which instructs that, among other factors, "the court, in determining the particular sentence to be imposed shall consider . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). As the United States correctly points out in its response, this factor looks "to *national* disparities not to differences among co-conspirators." *United States v. Fry*, 792 F.3d 884, 892 (8th Cir. 2015) (italics in original) (listing cases); *United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007) (same) (listing cases). Even so, while not required by § 3553(a), a district court may use its discretion to determine a defendant's sentence in light of a co-defendant's sentence. *Simmons*, 501 F.3d at 624 (citations omitted).

As argued in the government's response, Petitioner's incarcerative sentence was lower than sentences imposed on all save two of her co-defendants. Furthermore, the Court notes once again that Petitioner was sentenced at the bottom of her Guidelines range. The Sixth Circuit has observed that "it is pointless for a defendant whose own sentence is within the Guidelines to raise [an unwarranted-disparity claim]" and [t]he more out-of-range sentences that judges impose ..., the more disparity there will be. "*United States v. Elliot*, 327 F. App'x 540, 549 (6th Cir. 2009) (quoting *United States v. Shrake*, 515 F.3d 743, 748 (7th Cir. 2008)). The facts regarding sentence disparity in Petitioner's case convinces the Court that, but for counsel's failure to make the precise sentence-disparity arguments that Petitioner cites as attorney error, there is no reasonable probability that the Court would have exercised its discretion to impose a

lesser sentence on Petitioner than the bottom-of-the-Guidelines sentence it imposed. *See Smith v. Robbins*, 528 U.S. 259, 288 (2000) (observing that "it is still possible to bring a *Strickland* claim based on counsel's failure to raise a *particular* claim, but it is difficult to demonstrate that counsel was incompetent") (emphasis added). Petitioner has failed to make that demonstration.

Additionally, the record shows that counsel raised the issue of sentencing disparity in her Sentencing Memorandum (based on the disparity between the sentence of Petitioner who suffered mental deficiencies and the sentences of offenders who had no such impairments) and that the Court considered the need to avoid disparate sentences in making its sentencing determination [Docs. 241, Sentencing Memorandum (sealed), and Doc. 424, Sent. Hr'g Tr. Excerpt at 2, Case No. 2:16-CR-30]). The record shows that, not only did counsel make a sentence-disparity argument, but that the Court took account of that argument in fixing Petitioner's sentence.

Petitioner's sentence-disparity issue is not only meritless but is also disproved by the record. Therefore, counsel did not render a prejudicial performance in this regard.

3.  **Other Attorney Shortcomings** [Doc. 1 at 5] Doc. 2 at 5-7]

Petitioner maintains that counsel was ineffective for failing to challenge her mental history and (by implication) allowing her mental status to be established based on a single psychological evaluation. Though this claim utterly is lacking in details, the Court generously interprets it as an allegation that counsel failed to request more than one mental examination for Petitioner and to use its potential results as a basis to argue for a more lenient sentence for his client.

What Petitioner has omitted from her allegation of ineffective assistance is an explanation as to how the results from a second mental examination would have been more favorable to Petitioner than the results obtained from the forensic evaluation conducted during her criminal

prosecution that would have led to different judicial rulings with respect to her mental status [Docs. 39 (sealed), 87 (sealed), and 90 (sealed), Case No. 2:16-CR-30].

Furthermore, Respondent correctly points out that counsel used Petitioner's mental deficits to argue in her Sentencing Memorandum for a lesser sentence than those issued for offenders who had no such deficits and that counsel specifically requested a downward departure or a variance based in part on her client's mental health problems [Doc. 239 (sealed), Case No. 2:16-CR-30]. The Court considered those arguments at sentencing, denied the defense's motion for a downward departure, but took account of the mental health problems from which Petitioner suffered, as detailed in the PSR, and even recommended that Petitioner receive a mental health evaluation and needed treatment during her incarceration [Docs. 204, PSR (sealed), and 249, Judgment, Case No. 2:16-CR-30].

Furthermore, the decision as to whether to seek additional mental evaluations could have been a strategic one on counsel's part. Petitioner has pointed the Court to no reason as to why the mental examination to which she submitted was lacking or that counsel knew that the resulting forensic report contained any supposed inaccuracies and that another forensic examination would redound to her benefit. *See Williams v. Head*, 185 F.3d 1223, 1242 (11th Cir. 1999) ("Strategic decisions, such as the one [counsel] made not to request another mental evaluation of [the petitioner], are virtually unassailable, especially when they are made by experienced criminal defense attorneys.").

It is Petitioner who "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. Petitioner has not done so here. Nor, as discussed previously, has Petitioner asserted that, but for counsel's failure to request a second forensic examination, she would not have pled guilty but would have insisted

on standing trial. For these reasons, the Court finds this ineffective-assistance claim to be groundless.

In passing, Petitioner asserts in her memorandum brief that counsel "was against her resulting in 'divergent interest" and a breakdown in communication' and thus, her guilty-plea was the result of counsel's deficient representation" [Doc. 2 at 4].[3] These contentions are completely devoid of facts identifying the interests of counsel that diverged from those of Petitioner, describing how those interests amounted to a conflict of interest (if an attorney conflict-of-interest is what she intends to allege), or explaining the nature of the breakdown in communication between counsel and Petitioner that was so serious as to implicate the validity of her guilty plea.

Absent the necessary factual elaboration as to these last two asserted attorney missteps, the Court finds that the strong presumption of effective assistance required by *Strickland* defeats Petitioner's claim. *Strickland*, 466 U.S. at 689 (instructing that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance").

**B.    The Sui Generis Claim**

The heading of the final sub-section of Petitioner's memorandum brief is labeled "21 USC § 851" [Doc. 2 at 7]. Petitioner presents arguments that seemingly question the government's choice not to file an information regarding prior convictions under § 851(a)(1), a provision that requires any enhancement to an offender's sentence be preceded by the government's filing of a written information of those prior convictions. Yet, at the same time, Petitioner acknowledges that the government is not required to file an information with regard to enhancements under the

---

[3] The § 2255 motion contains two numbered grounds: (1) failure to file a notice of appeal and (2) failure to argue a sentence disparity and mental conditions [Doc. 1 at 4-5].

Guidelines, the sentencing authority underlying her sentence. Despite Petitioner's acknowledgement that she was sentenced under the Guidelines, she nonetheless maintains that "it is unclear just what particular sentencing scheme Petitioner Rucker was sentenced under" and concludes that she "is due relief under this claim" [*Id.*].

Petitioner's claim is internally inconsistent, in that she expresses bewilderment as to whether her punishment was mandated by statute or derived from the Sentencing Guidelines, while at the same time acknowledging that she received a Guidelines sentence. To clear up any misapprehension on Petitioner's part, the Court advises her that she was sentenced under the Guidelines (but within her statutorily-set range of five years to forty years) and refers her to the PSR (which states that her offense level was determined under the 2016 Guidelines Manual and that her guideline imprisonment range is 97 months to 121 months' imprisonment) and to her judgment, which shows that she received the lowest possible sentence she could have received in her sentencing Guidelines range [Docs. 204, PSR at ¶¶ 23, 62, 63, and 255, Case No. 2:16-CR-30]. *See Gibbs v. United States*, 655 F.3d 473, 479 (6th Cir. 2011) (explaining that "the sentencing guidelines are used as a starting point for determining where within the statutorily-set range a prisoner's sentence should fall").

Having so advised Petitioner, the Court finds her claim to be legally frivolous because the government sought no § 851 enhancement in Petitioner's case and because filing a § 851 notice is the responsibility of the government that arises only where it seeks a statutory enhancement to an offender's sentence. The government's decision not to file a § 851 enhancement confers no enforceable right on a criminal accused. In fact, such a decision benefits the accused. Thus, this claim lacks any arguable legal basis entitling Petitioner to collateral relief.

Furthermore, sentencing claims, such this one purports to be, if not raised on direct review, are procedurally defaulted and thus unreviewable, absent a showing of cause and prejudice or actual innocence. *Elzy v. United States,* 205 F.3d 882, 884 (6th Cir. 2000). No such a showing has been made, much less alleged, and, the Court finds, alternatively, that Petitioner's unexcused procedural default forecloses collateral review of her § 851 claim.

**C.     Amendment 794**

Petitioner maintains, in her motion to amend, that Guidelines Amendment 794 allows a role reduction, under USSG § 3B1.2(b), for a minor participant, meaning one who is less culpable than most participants, but whose role cannot be described as minimal [Doc. 4]. Petitioner further maintains that her claim must be brought under § 2255 and cannot be filed as a § 3582(c)(2) motion [*Id.* at 1]. The Court understands from Petitioner's allegations that she is urging the Court assess her culpability relative to the average participant in the offense, to find that she is "substantially less culpable than the average participant," and to adjust her sentence accordingly [*Id.* at 1-2].

Amendment 794 clarified USSG § 3B1.2, a sentencing guideline that provides for a two-level decrease in the offense level if a "defendant was a minor participant in any criminal activity."  Yet, federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but the rule of finality is subject to a few narrow exceptions. *Freeman v. United States*, 564 U.S. 2685, 2690 (2011). None of the exceptions apply here.

Moreover, contrary to what Petitioner asserts, a request to reduce a sentence must be brought by filing a motion for reduction of sentence under 18 U.S.C. § 3582(c)(2). Petitioner thus must seek a reduction of her sentence in a § 3582 motion, not in a § 2255 motion. Indeed,

17

Petitioner's request for a minor role adjustment in her sentencing is not a cognizable claim that is reviewable in a motion to vacate. *Coleman v. United States*, No. 2:14-CR-28-RLJ-MCLC, 2018 WL 3150452, at *8 (E.D. Tenn. June 27, 2018) (explaining that a sentence reduction request is not cognizable in a § 2255 motion), *dismissed in part*, No. 2:14-CR-28-RLJ-MCLC, 2018 WL 3625830 (E.D. Tenn. July 30, 2018).

Finally, as the United States argues in its response, Amendment 794 took effect on November 1, 2015, whereas Petitioner was sentenced in February of 2017 [Doc. 255, Case No. 2:16-CR-30]. Thus, Petitioner has received any benefit to which she was entitled under Amendment 794.

## IV. CONCLUSION

For the reasons discussed in this Memorandum Opinion, Petitioner's § 2255 motion to vacate [Doc. 1] will be **DENIED** and **DISMISSED**.

## V. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).

A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of the claims debatable or

wrong. *Slack*, 529 U.S. at 484. Having examined each of Petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that the dismissal of such claims were debatable or wrong. Therefore, the Court will **DENY** issuance of a certificate of appealibility.

A separate judgment will enter.

        **IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge